UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARQUIS DAMES,

<table>
<tr><td></td><td>Plaintiff,</td><td>**MEMORANDUM & ORDER**</td></tr>
<tr><td>-against-</td><td></td><td>**22-CV-6962 (NGG) (SJB)**</td></tr>
</table>

JP MORGAN CHASE & CO., JPMORGAN
CHASE BANK, N.A., and NOEMI GRAHAM,

Defendants.

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Marquis Dames brings this action against Defendants JPMorgan Chase & Co. ("JPMCC"), JPMorgan Chase Bank, N.A. ("Chase Bank"), and Noemi Graham (collectively the "Defendants"). (*See* Am. Compl. (Dkt. 5).) Plaintiff asserts claims for race discrimination under 42 U.S.C. § 1981 and intentional infliction of emotional distress ("IIED") under state law. Before the court is the Defendants' motion to dismiss the Amended Complaint. (Mot. to Dismiss (Dkt. 29).) For the following reasons, the motion is GRANTED with prejudice.

## I.  BACKGROUND[1]

Plaintiff, an African American male, was struck by a vehicle while riding his e-bicycle on October 29, 2021. (Am. Comp. ¶ 1.) Unable to work and in need of money, Plaintiff received a $2,000

---

[1] The following facts are taken from the Amended Complaint and, for the purposes of this motion to dismiss, are assumed to be true. *See Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 349 (2d Cir. 2022). The court is permitted to consider documents that are incorporated into the Amended Complaint by reference or that are "integral" to it. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). This includes the exhibits attached to Plaintiff's Amended Complaint. Documents attached to Plaintiff's opposition brief but not to his Amended Complaint cannot be considered at the motion to dismiss stage. *See Madu,*

check, dated September 15, 2022, from Venture Funding Group. (*Id.*) The next day, Plaintiff deposited the check at a Chase Bank branch located at 883 Flatbush Avenue, Brooklyn, NY 11226, where he had banked for approximately ten years. (*Id.* ¶18-20.) The check had still not "clear[ed]" as of September 27, 2022, so Plaintiff visited the Chase Bank branch located at 1509 Foster Avenue, Brooklyn, NY 11230 to inquire about the delay. (*Id.* ¶21-22.) While there, Plaintiff spoke with Defendant Noemi Graham, who was Vice President Branch Manager. (*Id.* ¶¶ 2, 22, 44.) During this conversation, Graham asked Plaintiff questions about the check's origin and directed him to Chase's Fraud Department for assistance. (*Id.* ¶¶ 22-24.) For two weeks, Plaintiff repeatedly contacted the Fraud Department and was alternatingly told that the funds would be released shortly and that they were still being held for "fraud." (*Id.* ¶¶ 27-28.) Joseph Duffy, founder of Venture Funding Group, also attempted to assist Plaintiff by speaking with staff at the Foster Avenue branch, "but no one would speak to him." (*Id.* ¶ 26.) Plaintiff subsequently visited the Chase Bank branch at 1599 Flatbush Avenue, Brooklyn NY 11210, where the manager told him that his account had been restricted and closed due to "fraud" and that the check still needed to be "verified." (*Id.* ¶ 29.)

On November 4, 2022, Plaintiff visited the Chase Bank branch at 42 Broadway, New York, NY 10004, where Chase representatives recognized that his account had been locked and closed but agreed to help transfer the restrained $2,000 to a new account. (*Id.* ¶¶ 34, 36.) Plaintiff was also told "that the person who signed the check would have to physically walk into the Brooklyn bank branch to verify the check." (*Id.* ¶ 35.) On November 7, 2022, Plaintiff learned for the first time that the funds were being withheld because "the name of the business on the check . . . did not

---

*Edozie & Madu, P.C. v. SocketWorks Ltd. Nig.,* 265 F.R.D. 106, 122-23 (S.D.N.Y. 2010).

match Lexis records[.]" (*Id.* ¶ 37.) Nonetheless, despite this dis-
crepancy, on November 9, 2022—54 days after the check was
deposited—the funds were finally released and Plaintiff's original
account was unlocked and reopened. (*Id.* ¶ 38.)[2]

Plaintiff brought suit over this incident on November 15, 2022.
(*See* Am. Compl. (Dkt. 1).) The Amended Complaint, which was
filed on November 22, 2022, asserts two claims: (1) race discrim-
ination under 42 U.S.C. § 1981; and (2) IIED under state law.
(*Id.* ¶¶ 39-50.) On April 21, 2023, the Defendants moved to dis-
miss the Amended Complaint for failure to state a claim upon
which relief could be granted, pursuant to Federal Rule of Civil
Procedure 12(b)(6).

## II. LEGAL STANDARD

To survive a 12(b)(6) motion, a complaint must "contain suffi-
cient factual matter, accepted as true, to 'state a claim to relief
that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
(2007)). "The plausibility standard is not akin to a 'probability
requirement,' but it asks for more than a sheer possibility that a
defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at
556). Although "a court must accept as true all of the allegations
contained in a complaint . . . [t]hreadbare recitals of the elements
of a cause of action, supported by mere conclusory statements,
do not suffice." *Id.* at 678. Lastly, "only a complaint that states a
plausible claim for relief survives a motion to dismiss[,]" and
"[d]etermining whether a complaint states a plausible claim for
relief will . . . be a context-specific task that requires the review-
ing court to draw on its judicial experience and common sense."
*Id.* at 679.

---

[2] The Amended Complaint notes that Plaintiff was without funds that
were rightfully his for 45 days, (Am. Compl. ¶ 5), but September 16, 2022
and November 9, 2022 are 54 days apart.

## III. DISCUSSION

Defendants make three arguments in support of dismissal. First, they assert that Plaintiff's claims against Defendant JPMCC fail as a matter of law because JPMCC "does not engage in the activities contemplated by 42 U.S.C. § 1981 nor any activities that would give rise to breach of any duties necessary to state a claim for intentional infliction of emotional distress." (Mot. to Dismiss at 4-5.) Second, Defendants argue that the Plaintiff's Amended Complaint fails to state a claim under § 1981 because it does not sufficiently allege an intent to discriminate on the basis of race. (*Id.* at 6.) Finally, they contend that the court, upon dismissal of the § 1981 claim, should decline to exercise supplemental jurisdiction over Plaintiff's state law IIED claim or dismiss this claim for factual insufficiency. (*Id.* at 12-13.) The court responds to each of these arguments in turn.

### A. Dismissal of JPMCC as a Party

Parent companies and their subsidiaries are distinct legal entities. *See Hatteras Enters., Inc. v. Forsythe Cosm. Grp., Ltd.*, No. 15-CV-5887 (ADS) (ARL), 2019 WL 9443845, at *6 (E.D.N.Y. Jan. 14, 2019) (citing *Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc.*, 2 F.3d 24, 26 (2d Cir. 1993)). Courts generally refuse "to impute the operating activities of an indirectly owned limited liability company to a parent holding company." *Hershfeld v. JM Woodworth Risk Retention Grp., Inc.*, No. 16-CV-6369 (BMC), 2017 WL 1628886, at *4 (E.D.N.Y. May 1, 2017). In this vein, district courts within this Circuit have dismissed claims against bank holding companies that are predicated on misconduct by associated bank subsidiaries. *See Zhao v. JPMorgan Chase & Co.*, No. 17-CV-8570 (NRB), 2019 WL 1173010, at *3 (S.D.N.Y. Mar. 13, 2019); *Pincover v. J.P. Morgan Chase Bank, N.A.*, 592 F. Supp. 3d 212, 217 n.3 (S.D.N.Y. Mar. 22, 2022); *Russell v. Citigroup*, No. 22-CV-2057 (LDH) (JRC), 2023 WL 2969823, at *5 (E.D.N.Y. Feb. 24, 2023) (R&R); *see also Akhtar v. JPMorgan*

4

*Chase & Co.*, No. 652274/2018, 2019 WL 4237985 at *2-3 (Sup. Ct. N.Y. Sept. 6, 2019).

Such is appropriate here. Defendants argue that the inclusion of JPMCC—the parent of Chase Bank—in this case was improper because JPMCC "does not engage in the business of banking, does not operate branches, does not employ Chase retail banking employees and is not involved in the daily operations of Chase retail banking branches[.]" (Mot. to Dismiss at 5.) Plaintiff responds that Chase Bank branches receive training on policies and procedures from JPMCC, which should subject JPMCC to liability for the actions of its subsidiary and agents. (Opp. to Mot. (Dkt. 29-3) at 4.) These barebones contentions provide the court with little basis to depart from the general convention of not finding bank holding companies liable for misconduct of their subsidiaries.[3] JPMCC must therefore be dismissed from this action.

### B.   Claim One: 42 U.S.C. § 1981

In assessing a § 1981 claim at the pleading stage, "the court does not apply the familiar *McDonnell Douglas* burden shifting test used to analyze the evidentiary support for discrimination claims, but rather generally assesses the plausibility of the plaintiff's claim based on the facts alleged." *McDowell v. N. Shore-Long Island Jewish Health Sys., Inc.*, 788 F. Supp. 2d 78, 81 (E.D.N.Y. 2011). A § 1981 plaintiff must plead that but for race, "it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Af. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). In so pleading, "a plaintiff's naked allegation that the defendant acted based on the plaintiff's race and color is too conclusory to survive a motion to dismiss." *Bentley, Jr. v. Mobil*

---

[3] Plaintiff could have attempted to circumvent this general bar by seeking to pierce the corporate veil. *See Miller v. Citicorp.*, No. 95-CV-9728 (LAP), 1997 WL 96569, at *9 (S.D.N.Y. Mar. 4, 1997); *Gutierrez v. J.P. Morgan Chase Bank & Co.*, No. 09-CV-2257 (LAK), 2009 WL 1059636, at *1 (S.D.N.Y. Apr. 13, 2009). He has not, however, raised this argument.

*Gas Station,* 599 F. App'x 395, 396 (2d Cir. 2015) (Summary Order) (citing *Albert v. Carovano,* 851 F.2d 561, 572 (2d Cir. 1988)). More specifically, "a plaintiff must allege facts supporting the following elements: (1) plaintiff is a member of a racial minority; (2) defendant's intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *James v. Am. Airlines,* 247 F.Supp.3d 297, 303 (E.D.N.Y. 2017) (*citing Brown v. City of Oneonta,* 221 F.3d 329, 339 (2d Cir. 2000)).

The second element is the primary focus of debate in this case. "Essential to an action under Section 1981 are allegations that the defendants' acts were purposefully discriminatory and racially motivated." *Albert v. Carovano,* 851 F.2d 561, 571 (2d Cir. 1988). Discriminatory intent may be alleged explicitly via direct evidence, or implicitly by way of "circumstantial evidence that supports an inference of discrimination." *Oparaji v. ABN AMRO Mortg. Grp., Inc.,* No. 19-CV-1650 (MKB), 2020 WL 9816011, at *14 (E.D.N.Y. Sept. 18, 2020) (citing *Lizardo v. Denny's, Inc.,* 270 F.3d 94, 104 (2d Cir. 2001)). An inference of discrimination may be drawn through observation of similarly situated individuals who are not members of the relevant protected class being treated differently than plaintiffs. *Id.* (*citing Lizardo,* 270 F.3d at 101).

For example, the plaintiff in *Nwachukwu v. Liberty Bank* stated a § 1981 claim where he alleged that the bank's employees had inquired into his country of origin and made comments—including, "[w]e don't want money from your type"—that could be reasonably inferred to communicate racially discriminatory intent. 257 F. Supp. 3d 280, 305 (D. Conn. 2017). Conversely, in *Rojas v. Signature Bank,* the court dismissed a § 1981 claim because the plaintiff "made only bare bones conclusory allegations in support of his claim" and failed to allege any "facts in support of his conclusion that defendant had a discriminatory intent for

6

its actions." No. 18-CV-6757 (KAM), 2019 WL 1333257 at *2 (E.D.N.Y. Mar. 25, 2019).

Here, Plaintiff fails to provide sufficient facts to properly allege discriminatory intent. His primary argument is a restatement of a counterfactual posed in *Comcast*: "what would have happened if the plaintiff had been white?" 140 S.Ct. at 1015. Tailoring this question to the instant facts, Plaintiff asks the court to consider: "[d]o [w]hite young men get accused of fraud with respect to a check in the amount of only $2,000.00 and wait forty-five (45) [sic] days to access said funds, when said check had always been good and sufficient and get accused of criminal activity where there was none?" (Opp. to Mot. at 5.) Plaintiff is correct in posing the question, but asking the hypothetical about similarly situated "[w]hite young men" is only the first step; *Comcast* also requires that Plaintiff also allege that his race was the "but-for cause" of Chase Bank's behavior by offering factual allegations of explicit or implicit discrimination. 140 S.Ct. at 1015; *see also Oparaji*, 2020 WL 9816011, at *14.

In this regard, the Amended Complaint is wholly deficient. Plaintiff states that he deposited the check at the Chase Bank branch at 883 Flatbush Avenue, but does not say if he did this in person or using an ATM. (Am. Compl. ¶¶18-20.) Plaintiff then notes that after more than ten days without access to the funds, Noemi Graham told Plaintiff that she would try to "fix the situation," but also that she accused Plaintiff of fraud—a seeming contradiction that is never explained. (*Id.* ¶¶ 22-25.) Nowhere in the Amended Complaint does the Plaintiff clearly allege that any employee of Chase Bank mentioned his race—much less communicated explicit discriminatory intent—or that he observed himself being treated dissimilarly to Chase's similarly situated non-black customers. (*See generally id.*) Plaintiff simply alleges that Noemi Graham acted with malice toward him, "singling him out for discriminatory treatment based upon his racial classification

7

(because he is Black and wears dreadlocks)." (*Id.* at ¶ 44.) This allegation is conclusory and without support. "Plaintiff alleges no facts in support of his conclusion that defendant had a discriminatory intent for its actions," and instead provides the court with only raw speculation. *Rojas*, 2019 WL 1333257 at *2.

The Amended Complaint also acknowledges an alternative possible explanation for Chase Bank's treatment of Plaintiff, which further undermines a finding of discriminatory intent. *See Akyar v. TD Bank US Holding Co.*, No. 18-CV-379 (VSB), 2018 WL 4356734, at *3 (S.D.N.Y. Sept. 12, 2018) ("[A] complaint that identifies other possible motives, combined with a lack of specific factual support of racial animus, contradicts a claim of racial discrimination."). As Defendants note, (Mot. to Dismiss at 8), the check at issue was flagged for fraud because of the discrepancy between the Venture Funding Group address on the check and its address on Lexis. (Am. Compl. ¶ 37.) Plaintiff argues that Defendants should have approved the check simply because the two addresses are located in the same town and zip code. (Opp. to Mot. at 6.) But he provides no factual allegations that suggest the stated justification was pretextual or that in any way contradict the Defendants' narrative. This unrefuted alternative explanation further undercuts a finding of intent. In sum, the Amended Complaint does not sufficiently allege that racial discrimination was the but-for cause of the hold placed on Plaintiff's funds.[4] Plaintiff's § 1981 claim must therefore be dismissed.

---

[4] Plaintiff's claim for race discrimination may also fail to establish the third element under § 1981, discrimination concerning one of the statute's enumerated activities. Plaintiff alleges a delay in access to funds in the course of Chase Bank's retail banking operations. (*See* Am. Compl. ¶ 5.) Retail banking involves the enjoyment of a contractual relationship, and thus falls into one of the enumerated activities covered by § 1981. *See Nwachukwu*, 257 F. Supp. 3d at 305; 42 U.S.C. § 1981(b). But delay in access to banking services is generally not an injury covered by this statute. *See Alexander v.*

### C. Claim Two: Intentional Infliction of Emotional Distress

Because it dismisses the § 1981 claim, the court is within its discretion to also dismiss Plaintiff's supplemental state law IIED claim. *See* 28 U.S.C. § 1367(c)(3). When deciding whether to retain jurisdiction after dismissing claims over which it has original jurisdiction, courts balance the traditional "values of judicial economy, convenience, fairness, and comity." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (*citing United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966)); *see also Williams v. City of New York*, No. 15-CV-6900 (BMC), 2016 WL 5173254, at *5 (E.D.N.Y. Sept. 21, 2016).

Considering the four values articulated in *Cohill*, the court declines to exercise supplemental jurisdiction over Plaintiff's IIED claim. As a matter of comity, the IIED claim would be better suited for state court. *See Sheppard v U.S. Tennis Ass'n*, No. 17-CV-5719 (AMD) (SMG), 2018 WL 3941941, at *4 (E.D.N.Y. Aug. 16, 2018). The consideration of fairness also suggests dismissal, as state courts will ensure the state claim "a surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 726. And because this case is still in its earliest stages, and still may be refiled in state court,

---

*JPMorgan Chase Bank, N.A.*, No. 19-CV-10811 (OTW), 2021 WL 1061833, at *4 (S.D.N.Y. Mar. 18, 2021) (finding that a "twenty-minute delay" in being able to withdraw funds from a bank account did not implicate the third § 1981 requirement); *Bentley v. United Refin. Co. of Pa.*, 206 F.Supp.2d 402, 406 (W.D.N.Y. 2002) ("[M]ere delay, even coupled with discourteous treatment, poor service, or racial animus, is insufficient to sustain a § 1981 claim."). On the other hand, a 54-day delay paired with the fact that Plaintiff had to visit four separate Chase Bank branches before he could access his funds may distinguish the instant case. Regardless, the court need not answer this question because Plaintiff fails to satisfy § 1981's second element and therefore fails to state a claim.

dismissal is also in the interest of convenience and judicial effi-
ciency. *See Klein & Co. Futures. Inc. v. Bd, of Trade*, 464 F.3d 255,
262 (2d Cir. 2006) ("[W]here, as here, the federal claims are
eliminated in the early stages of litigation, courts should gener-
ally decline to exercise pendent jurisdiction over remaining state
law claims."). Accordingly, the court follows others in this district
and declines to exercise supplemental jurisdiction over Plaintiff's
remaining state law claim. *See, e.g., Cha v. Hooters of Am., LLC*,
No. 12-CV-4523 (DLI) (JMA), 2013 WL 5532745, at *6 (E.D.N.Y.
Sept. 30, 2013); *Aigbojie v. Fed'n Emp. and Guidance Serv.*, No.
95-CV-4977 (NG), 1997 WL 702977 at *1 (E.D.N.Y. Nov. 7,
1997).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff has failed to state a claim.
Plaintiff's briefing in opposition does not seek leave to amend
upon a finding of dismissal. Moreover, "[a]n opportunity to
amend is not required where the plaintiff already has amended
the complaint." *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143,
166 (E.D.N.Y. 2014). Accordingly, the Defendants' motions to
dismiss is GRANTED with prejudice.


SO ORDERED.


Dated:      Brooklyn, New York
            August 7, 2023

                                        s/Nicholas G. Garaufis
                                        _____
                                        NICHOLAS G. GARAUFIS
                                        United States District Judge